Judgment reversed, new trial granted, referee discharged, costs to abide event in each action.

---

BRIDGET CORBETT, RESPONDENT, *v.* THE CITY OF TROY, APPELLANT.

*City of Troy — streets, in use for five years, become public streets without any affirmative municipal action — accident from ice formed from water leaking from a hydrant — notice to the city.*

The provision of the charter of the city of Troy that "all streets and avenues in said city which are now opened, or shall hereafter be opened to public use, and shall be used as such for five years continuously, shall be deemed and taken to be public streets and avenues," does not contemplate any official action on the part of the city as being necessary to confer upon the streets and avenues, referred to therein, the character of public streets and avenues.

In an action, brought to recover damages sustained by the plaintiff from falling upon an icy sidewalk in the city of Troy, it appeared that a hydrant upon one side of the street had been leaking during the winter, and that the water escaping therefrom worked its way across the street and caused ice to form upon the place at which the accident occurred.

*Held,* that, although the evidence did not show that the ice had existed at the place of the accident for such a length of time as to create constructive notice to the city of its existence, yet the jury were justified in finding negligence on the part of the city, in that it had permitted an escape of the water from the hydrant upon the sidewalk, which would inevitably cause ice to form as soon as the weather became cold, and, in that view of the case, in finding a verdict in favor of the plaintiff.

APPEAL by the defendant from a judgment in favor of the plaintiff, rendered at the Rensselaer Circuit, after a trial before the court and

a jury, at which a verdict was rendered by the jury in favor of the plaintiff for $350 damages, which judgment was entered in the office of the clerk of the county of Rensselaer on the 1st day of October, 1888.

The action was brought to recover damages for personal injuries sustained by the plaintiff, as alleged in the complaint, from a fall upon ice which had formed on the sidewalk on Tyler street, in the city of Troy, on the morning of February 22, 1886.

*R. A. Parmenter*, for the appellant.

*James Lansing*, for the respondent.

LEARNED, P. J.:

It appears by the case that it contains substantially the whole of the evidence. (*Porter* v. *Smith*, 107 N. Y., 531.) One person was excused by the court on its own motion from sitting as a juror, he having stated that his opinion was "that all these suits against the city for slipping on icy sidewalks should be stopped once and forever." The defendant excepted. The court proceeded by consent with ten jurors. If the court proceeded with ten jurors by consent, this must have been a waiver by defendant of his objection to the exclusion of the juror above mentioned. He may have been the eleventh. And certainly a juror who had expressed that opinion in court was not indifferent between the parties.

The question to plaintiff as to the condition of her health is competent. One can know that he is in poor health without being a doctor. The statement by plaintiff's sister that "she looked to be sick" was not improper. Several similiar answers seem to have been excluded or stricken out. In the case, after the plaintiff had offered in evidence the charter of Troy relating to the water department, it is said "charter may be read by either party." Subsequently comes an objection by the defendant to proving any of the statutes referring to the water-works. We see nothing objectionable in reading any part of the charter, especially after the consent above quoted.

The charter of Troy provides: "All streets and avenues in said city which are now opened, or shall hereafter be opened to public use, and shall be used as such for five years continuously, shall

be deemed and taken to be public streets and avenues." (Chap. 598, Laws of 1870, title 6, § 4; chap. 129, Laws of 1872, title 6, § 3.) Under the decisions in *Strong* v. *Brooklyn* (68 N. Y., 1); *Requa* v. *Rochester* (45 id., 129); *Morse* v. *Troy* (38 Hun, 301), we think the court was justified in submitting to the jury in the manner it did the questions whether the place in question was in a public street. The evidence of an engineer that he had laid out the streets, and the evidence of use, seem to bring the case within those decisions. The defendant urges that these words in that section of the charter, " opened or to be opened," apply only to some official action on the part of the city. We think that the decisions above cited show that such is not the true construction. It is suggested by the defendant that it is not right that a private citizen should thus compel the city to accept streets. But that is a consideration for the legislature.

The remaining question is that of negligence of the city in not removing the ice. The testimony is not very satisfactory. The accident happened Monday morning, February twenty-second, on the north side of Tyler street. Tyler street, as laid out by the city, ran from Hudson street west to the river. From Hudson street it had been continued eastward by the owner of the property, on a map made for him some twenty-five years before the accident. Some houses had been built upon it and on other connecting streets on the same map. One Gleason, whose house was on the south side of the street, about opposite the place where plaintiff fell, had a hydrant of his own on his lot by his house. It is claimed by plaintiff that the water therefrom ran across the street and froze on the south sidewalk (so-called) and formed a layer of ice. Some two inches of snow had fallen Sunday night and was on the ice. The plaintiff did not see the ice because it was covered with snow, and thus fell. The plaintiff's family used to get water at this hydrant. The testimony is that the water burst out across the road and worked its way and struck the sidewalk. There is testimony also showing that this ice had existed for several weeks. The north side of the road was lower than the south, and the street descended steeply towards the west.

In opposition to this the defendant proves, by the record of one who had observed the weather and temperature, that on the thirteenth there was a heavy rain; that from that day to the sixteenth

the thermometer was considerably above freezing; that the sixteenth and seventeenth was freezing weather, but not below nineteen degrees; the eighteenth and nineteenth were generally above freezing, and there was steady rain on the nineteenth; during the twentieth it grew cold and snowed on the twenty-first. Now, in order to make the city liable, there must be constructive notice. It seems impossible, with the heavy rain on the thirteenth producing even a freshet, and with the changeable weather afterwards and a steady rain on the nineteenth, that the ice on which plaintiff fell could have been on the sidewalk prior to the twentieth. But, on the other hand, the hydrant is shown to have been leaking during the winter; and, therefore, although this ice may have existed but a few days, yet the jury might have been justified in finding negligence in the city in permitting an escape of water upon the sidewalk which would inevitably cause ice as soon as the weather became cold. This is not a case where the ice came from what are called natural causes, such as the freezing of rain or sleet. Here an escape of water was permitted through the winter. It might be harmless during warm winter weather, but it would certainly cause a dangerous place when the temperature should be below thirty-two degrees. There was constructive notice of the escape of this water and of its flowing on the sidewalk. And knowing that a cold night might make this a cause of peril, the city might justly be found guilty of negligence by the jury.

For these reasons we think the judgment and order should be affirmed, with costs.

LANDON and INGALLS, JJ., concurred.

Judgment and order affirmed, with costs.